IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS MOLINARY-FERNÁNDEZ, *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>**Defendant.** | CIVIL NO. 18-1538 (JAG) |

OPINION AND ORDER

GARCIA-GREGORY, D.J.

Plaintiffs Luis Molinary-Fernández ("Molinary") and Aileen Cabrera-Vinolo ("Cabrera"), by themselves and on behalf of their conjugal partnership, as well as Luis Molinary-Jiménez (collectively, "Plaintiffs"), brought suit against BMW of North America, LLC ("Defendant") for an alleged product liability tort, seeking to recover physical and emotional damages under Article 1802 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31 § 5141. Docket No. 1.[1]

On October 10, 2019, Defendant moved for summary judgment arguing that Plaintiffs cannot establish proof of a product defect that led to the alleged damages because they failed to designate a liability expert as witness, nor establish the existence of any genuine issue of material fact that would preclude summary judgment. Docket No. 24 at 3-4. Plaintiffs opposed the motion, asserting that Defendant's theory of applicable law is erroneous and that there are genuine issues of material fact. Docket No. 27. Defendant replied. Docket No. 31. After considering the Parties'

---

[1] The Parties are diverse and the amount in controversy exceeds $75,000.00; thus, the Court has diversity jurisdiction. *See* 28 U.S.C. § 1332(a). State substantive law supplies the rules of decision for a federal court sitting in diversity jurisdiction, meaning Puerto Rico law applies here. *Salvati v. Am. Ins. Co.*, 855 F.3d 40, 44 (1st Cir. 2017) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

CIVIL NO. 18-1538 (JAG)                                                                                         2

positions and applicable law, the Court **GRANTS** Defendant's Motion for Summary Judgment

and **DISMISSES WITH PREJUDICE** Plaintiffs' claims.

### SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party,

and it is material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*,

355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving

party has properly supported [its] motion for summary judgment, the burden shifts to the

nonmoving party . . . ." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000)

(quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The non-movant must demonstrate

"through submissions of evidentiary quality [] that a trial worthy issue persists." *Iverson v. City of*

*Bos.*, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the entire record "in

the light most hospitable to the party opposing summary judgment, indulging in all reasonable

inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting

*Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory

allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713

F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.

CIVIL NO. 18-1538 (JAG)                                                                          3

1990)). Throughout this process, courts cannot make credibility determinations or weigh the

evidence, as these are jury functions and not those of a judge. *See Anderson*, 477 U.S. at 255; *Garcia-*

*Gonzalez v. Puig-Morales*, 761 F.3d 81, 99 (1st Cir. 2014) (internal citations omitted).

## FINDINGS OF FACT

The following factual findings are taken from the Parties' statements of uncontested facts

and supporting documentation. In accordance with Local Rule 56(e), the Court only credits facts

properly supported by accurate record citations. The Court has disregarded all argumentative and

conclusory allegations, speculations, and improbable inferences disguised as facts. *See Forestier*

*Fradera v. Mun. of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Munoz*, 896 F.2d at 8.

1.      On September 11, 2017, shortly after arriving home in her 2016 BMW X5 Hybrid vehicle, Cabrera noticed a fire in the garage of her and her spouse's residence. Docket Nos. 24-2 at 1; 28 at 1, 3.

2.      Cabrera had left the vehicle—bought roughly a year before and had low mileage—charging through an extension cord connected to an electrical outlet in the wall of the garage. Docket Nos. 24-2 at 1-2; 28 at 1.

3.      The extension cord was at least ten months old and was previously utilized to charge house electronics. It also had a tightened zip tie around it and was coiled up in an area containing shelves, boxes, and other articles. Docket Nos. 27-3 at 6-8; 31-1 at 4-5; 31-3 at 15.

4.      This was the first time since at least September 6, 2017 that the vehicle was charged. *Id.*

5.      The vehicle had been working well, and Cabrera did not notice anything unusual when she used it earlier that day on September 11, 2017. Docket No. 28 at 3-4.

6.      The electrical outlet used to charge the car did not arc, nor short circuit. Docket Nos. 28 at 4; 32 at 3.

7.      The breakers in the main electrical panel of the house did not trip and were working well after the fire. *Id.*

8.      According to the fire marshal who investigated the incident, determining the cause of the fire should be up to a "certified electrical mechanic and expert in hybrid vehicles." Docket

CIVIL NO. 18-1538 (JAG)                                                                4

Nos. 24-2 at 1; 28 at 1-2; *see also* Docket No. 24-4. Furthermore, the fire marshal determined that the incident was "accidental," meaning that it could have been caused either by "a problem or defect in the vehicle or by an involuntary human error in the use and handling of said vehicle." Docket No. 24-4 at 2.

        9.      The deadline for Plaintiffs to announce expert witnesses, and to produce expert reports and expert witnesses' disclosures, expired on June 28, 2019. Docket No. 20. Plaintiffs failed to designate any expert witness or submit any expert report on the vehicle. Docket Nos. 24-2 at 1; 28 at 1.

        10.     As noted by Defendant's mechanical engineer expert, Hernán Mercado-Corujo, the vehicle's owner manual cautions users not to "extend the supplied charging cable with external cables." Docket No. 31-3 at 15. Furthermore, the manual specifically warns that "[i]mproper use of the charging cable can [] lead to damage, for example cable fire. There is a risk of fire." *Id.*

        11.     Defendant's expert specifically ruled out the vehicle as the fire's place of "origin" and suggested that the utilization of a used extension cord, coiled around several objects, could have caused the incident. *Id.* at 13-14, 17

The Court's review of the record shows that the only contested fact relates to the fire's place of origin.[2] Nonetheless, considering the applicable law, *infra*, said fact is not material and does not preclude the Court from entering summary judgment. Even assuming without deciding that the fire originated in the vehicle's motor, the Court's conclusion remains the same.

## ANALYSIS

### I.    Product Liability Under Article 1802

Plaintiffs allege that Defendant is strictly liable because its product suffered from either a manufacturing defect or a design defect. Docket No. 27 at 9. Plaintiffs further posit that, as to either form of defect, they may establish a *prima facie* case of product liability solely by presenting circumstantial evidence at trial. *Id.* at 1. The Court disagrees.

---

[2] There is a sharp discrepancy between the fire marshal's investigation, co-plaintiff Cabrera's testimony, and Defendant's expert witness report. While the first two suggest that the fire "began in the area of the motor," the latter specifically concluded that the vehicle was not the fire's place of "origin," *i.e.* "there is no evidence that the fire started within the vehicle." *Compare* Docket Nos. 24-4 at 2 and 28-4 at 57, with Docket No. 31-3 at 13-14, 17.

CIVIL NO. 18-1538 (JAG)                                                                           5

In general, "a manufacturer is strictly liable [] when an article he places on the market, []

proves to have a defect that causes injury to a human being." *Rivera Santana v. Superior Packaging*

*Inc.*, 132 D.P.R. 115, 125-26 (1992) (cleaned up); *Montero Saldaña v. Am. Motors Corp.*, 107 D.P.R. 452,

461 (1978) (citation omitted). To establish strict liability under Puerto Rico law, a plaintiff must

prove that (1) the product had a defect that made it unsafe, and (2) the defect proximately caused

the plaintiff's injury. *See Rivera Santana*, 132 D.P.R. at 126.

Plaintiffs have failed to present sufficient evidence to satisfy the first element of this test

much less the second, given the complex nature of the product in this case. This stands true

regardless of whether Plaintiffs claim a manufacturing defect or a design defect.[3] As such,

Plaintiffs are incorrect in arguing "it can be inferred by the nature of the incident that the damage

occurred because of the defect in the product, although no proof is produced of the particular or

specific causes of the injurious event." Docket No. 27 at 10.

A. **Manufacturing Defect**

When it comes to manufacturing defect claims, courts have recognized that a defective

product is "one that differs from the manufacturer's intended result or from other ostensibly

identical units of the same product line," *i.e.* it is a product in "substandard condition." *Rivera*

*Santana*, 132 D.P.R. at 128-29 n.7 (citation omitted). The manufacturer is then responsible for the

damages resulting from any deviations from the norm. *See Montero Saldaña*, 107 D.P.R. at 462. The

manufacturer, however, is not an absolute insurer of the product's safety; thus, it will respond in

---

[3] Defendant alleges that Plaintiffs did not specify whether they are bringing a product liability case under the manufacturing defect doctrine or the design defect doctrine. Docket No. 24-1 at 1. Since the two doctrines are clearly intertwined in the record—including the complaint—the Court will address both. *See* Docket No. 1 at 3.

CIVIL NO. 18-1538 (JAG)                                                                                6

strict liability only where the usage to which the product was put by the plaintiff was reasonably

foreseeable by the manufacturer. *See Rivera Santana*, 132 D.P.R. at 127; *Pérez-Trujillo v. Volvo Car*

*Corp.*, 137 F.3d 50, 53 (1st Cir. 1998).

Moreover, under Puerto Rico law, Plaintiffs must essentially prove four elements: (1) the

vehicle (here, its electric operation, engine, or battery) had a "manufacturing defect" of which

Plaintiffs were unaware, (2) the defect made the recharging system "unsafe," (3) the usage to

which the vehicle was put by Plaintiffs was reasonably foreseeable by Defendant, and (4) the

defect proximately caused the injury. *Rivera Santana.*, 132 D.P.R. at 127 (citations omitted); *see*

*also Malave–Felix v. Volvo Car Corp.*, 946 F.2d 967, 971 (1st Cir. 1991). If a plaintiff offered sufficient

proof of these four elements, Defendant would be strictly liable even though the vehicle and its

components were manufactured with reasonable care. *See* Restatement (Second) of Torts § 402A;

*see also Pérez-Trujillo*, 137 F.3d at 53.

Here, Plaintiffs contend that "external factors to the car itself" have been excluded by the

evidence provided, which "leaves a car malfunction as the only reasonable cause of the fire."

Docket No 27 at 16. Plaintiffs further posit that the vehicle "did not meet the expectations of

ordinary consumers [] since there is generalized knowledge that hybrid automobiles do not start

a fire" while recharging. *Id*. In other words, Plaintiffs attempt to prove, by process of elimination,

that the vehicle had a manufacturing defect. This is as precipitated as a logical leap can get.

In advancing their claim, Plaintiffs fail to present expert or direct evidence regarding any

manufacturing or design defect. Instead, they essentially rely on the following circumstantial

evidence: (1) Cabrera's testimony that she saw the fire in the "front end of the vehicle;" Docket

Nos. 28-4 at 57; (2) Molinary's testimony that he checked the breakers and the electric panel of

the house after the fire, and that it was all working properly, Docket Nos. 28 at 4; 32 at 3; (3) the

CIVIL NO. 18-1538 (JAG)                                                                 7

fire marshal's report, which stated that the garage receptacles appeared undamaged and that the

fire "originated in the area of the motor," Docket No. 24-4 at 2; and (4) the certified electrician's

inspection of a single garage receptacle, Docket No. 27-4.

From the record presented, no reasonable factfinder can conclude that the hybrid vehicle,

in particular its electric recharging system or components, had a manufacturing defect. This is

because Plaintiffs' evidence is insufficient and fails to show the existence of a defect in the first

place. The fact that Cabrera testified seeing the engine on fire, or that the fire marshal considered

the motor to be the fire's place of "origin," do not imply that the vehicle had a defect of sorts. *See*,

*e.g.*, *Hernandez Denizac v. Kia Motors Corp.*, 323 F. Supp. 3d 277, 285 (D.P.R. 2018) (holding that

plaintiff's "direct eyewitness observation of the product's malfunction [the air bag not deploying]"

does not "render expert testimony unnecessary," nor does it "serve as indication that a defect

exist[s] in the design or manufacture."); *Rodriguez Mendez v. Laser Eye*, 195 D.P.R. 769, 789-90 (2016)

(refusing to find a product defect because the plaintiff's only evidence was that something was

wrong, *i.e.* that plaintiff noticed having metal in his eye). Much less does the evidence show

what—if anything—made the vehicle "unsafe," as required by the second prong of the test. *See*

*Rivera Santana.*, 132 D.P.R. 126-28. In fact, nowhere in the fire marshal's report, or the certified

electrician's inspection, is a manufacturing defect identified as the cause of fire. *See* Docket Nos.

24-2 at 1; 24-4; 28 at 1-2, 4; 32 at 3. To the contrary, the fire marshal concluded that the event was

"accidental" and that to determine its cause, a mechanical engineer or an expert in electric vehicles

should be consulted. Docket Nos. 24-2 at 1; 28 at 1-2.

The fact that the car was relatively new and had presented no issues previously, and that

the house had no electrical problems, does not rule out all the other potential causes of the fire.

Quite the opposite, Defendant proffered a mechanical engineer's report of the incident that

CIVIL NO. 18-1538 (JAG)                                                                  8

specifically discarded the vehicle as the fire's place of "origin," suggesting also that the use of a

ten-month-old extension cord to charge the vehicle, which was coiled around several objects and

had a tightened zip tie around it, could have caused the incident. Docket No. 31-3 at 13-17. Even

more, the vehicle's owner manual cautions users not to "extend the supplied charging cable with

external cables," and further warns that "[i]mproper use of the charging cable can [] lead to

damage, for example cable fire. There is a risk of fire." *Id.* at 15. These findings support the

conclusion that Plaintiffs did not rule out all causes of the fire and that Plaintiffs did not use the

product as "intended."

Accordingly, Plaintiffs should have—at the very least—presented more detailed testimony

as to the origin and cause of the fire, while reasonably linking the alleged manufacturing defect—

which Plaintiff has failed to even identify—to the incident. Instead, their evidence simply

amounts to "self-serving" assertions, "conclusory allegations," and "unsupported

speculation." *Forestier Fradera*, 440 F.3d at 21 (quotations omitted). Summary judgment is, thus,

appropriate. *Id.*

Regardless, as the Court will further explain, this is not a case where a defect is *easily*

inferred from the appearance of the product and the injury alone. *See, e.g. Pérez-Trujillo*, 137 F.3d at

53 (where the existence of a defect was apparent from plaintiff's testimony of seeing the car

"zigzagging," with the "air bag open," and with "white smoke" in the driver's compartment, before

the collision even happened). As such, where a technical analysis must be made regarding a

product issue—here, a hybrid vehicle's electric components or recharging system—the First

CIVIL NO. 18-1538 (JAG)                                                                  9

Circuit has been clear in concluding that expert testimony is required. [4] *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 77 (1st Cir. 2002). Hence, the need for expert evidence as to both manufacturing and design defects really depends on whether "the question is one of common knowledge such that lay people could 'reach the conclusion as intelligently as the witness.'" *Id.* (quoting *Collazo–Santiago v. Toyota Motor Corp.*, 937 F. Supp. 134, 140 (D.P.R. 1996), aff'd, 149 F.3d 23 (1st Cir. 1998)). Since this case unequivocally involves a product outside the "common knowledge," expert evidence was vital to Plaintiffs' claim.

Accordingly, Plaintiffs' manufacturing defect claim is hereby **DISMISSED WITH PREJUDICE.**

### B.  Design Defect

Likewise, as to design defects, Puerto Rico has followed the example set by California, allowing a plaintiff to prevail under one of two particular prongs: (1) "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner," or (2) "the product's design proximately caused [the plaintiff's] injury and the defendant fails to prove, in light of the relevant factors . . . that on balance the benefits of the challenged design outweigh the risk of danger, inherent in such design." *Collazo–Santiago*, 937 F. Supp. at 137 (cleaned up). These are referred to as the "consumer-expectancy prong" and the "risk-benefit prong," respectively. *Id.* "Under either, expert testimony is necessary to define the standard

---

[4] The Court is mindful that other states and circuits, through the "malfunctioning theory," have recognized that direct evidence or expert opinion is not essential to prove a defect "when direct observation of the malfunction itself is circumstantial evidence of a defective condition." *See Pérez–Trujillo*, 137 F.3d at 56 (where the First Circuit, in a strictly persuasive manner, makes an "informed prophecy" of such issue by citing *Ducko v. Chrysler Motors Corp.*, 639 A.2d 1204, 1206 (Pa. 1994). Yet, for the reasons stated above, this logic is inapplicable here.

CIVIL NO. 18-1538 (JAG)                                                                          10

of care whenever the design of the relevant product is beyond the experience or knowledge of an

average lay person." *Vazquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 52 (1st Cir. 2007).

Defendant alleges that this case "require[s] specialized knowledge, skill or training

outside the common knowledge of jurors" to "determine whether any design defect exist[s]."

Docket No. 24-1 at 6. In support, Defendant cites cases where summary judgment was appropriate

because of failure to furnish expert evidence as to an unusual design defect. *Id.* at 7. As fallback,

Defendant contends that the consumer-expectation prong should only be used where "the

minimum safety of a product is within the common knowledge of lay jurors." *Id.* at 10.

In response, Plaintiffs argue that "expert testimony is not required" because it is common

knowledge that "a hybrid automobile pursuant to the consumer's expectations should not start a

fire while it is being charged through an extension to a perfectly working outlet in the owner's

garage." Docket No. 27 at 10, 18, 21. Plaintiffs then attempt to distinguish Defendants' cited case

law and allege that "the instant case does not underlie a technical matter [in the way that airbag-

related accidents do] but a consumer's ordinary experience." *Id.* at 19. Plaintiffs are wrong.

As previously mentioned, *supra* I.A., the Court is hereby required to determine if a hybrid

vehicle and its recharging system is sufficiently complex as to escape the understanding of

ordinary consumers. *Vazquez-Filippetti*, 504 F.3d at 52. The answer is unequivocally yes. This case

is analogous to those cited by Defendant, where, for example, airbag malfunctioning was deemed

a matter too "technical" for a lay person to reasonably evaluate, making expert evidence necessary.

*Quintana-Ruiz*, 303 F.3d at 77 (citation omitted) (citing *Soule v. Gen. Motors Corp.*, 882 P.2d 298, 308

(Cal. 1994) ("[T]he ordinary consumer of an automobile simply has 'no idea' how it should

perform in all foreseeable situations, or how safe it should be made against all foreseeable

CIVIL NO. 18-1538 (JAG)                                                                                    11

hazards."); *see also Fremaint v. Ford Motor Co.*, 258 F. Supp. 2d 24, 28, 30 (D.P.R. 2003) ("[A]n

ordinary consumer would simply not know what minimum safety to expect from [an SUV

vehicle]" or the "seatbelt[] [mechanism] once a vehicle is involved in an accident."); *Silva v. Am.*

*Airlines, Inc.*, 960 F. Supp. 528, 533 (D.P.R. 1997) (finding that, to prove an overhead bin space

design defect, a scientific analysis was required and the Court could not rely on "mere

anecdote[s]."). In fact, the situation here involves a product far more complex and unusual than

those in the cited case law, because the product uses technology far more uncommon. Thus,

Plaintiffs' perceptions, without accompanying expert analysis, fail to establish whether the

product had a design defect, let alone if it was used as ordinarily "intended" while performing as

"safely" as expected.

　　This conclusion is again supported by the fire marshal's report, which stated that he could

not determine the cause of fire and, rather, that such determination would "be left [to] a certified

electrical mechanic and expert in hybrid vehicles." Docket Nos. 24-2 at 1; 28 at 1-2. Bafflingly,

Plaintiffs failed to engage an expert to fill in the gaps left by the fire marshal, while Defendant

retained as expert a licensed mechanical engineer, who is an MIT graduate and specializes in the

automotive industry. Docket No. 31-3. This expert specifically ruled out the vehicle as the fire's

place of "origin" and suggested that the utilization of a used extension cord, which was coiled

around several objects and tightened by a zip tie, could have caused the incident. *Id.* at 13-14, 17.

In his report, the expert even cited the vehicle's owner manual, which cautions users not to

"extend the supplied charging cable with external cables," and that "[i]mproper use of the

charging cable can [] lead to damage, for example cable fire. There is a risk of fire." *Id.* at 15.

　　As such, where the nature of the product may place it outside the realm of an ordinary

consumer's experiences, a product may be found defective in design "if through hindsight the jury

CIVIL NO. 18-1538 (JAG)                                                                          12

determines that the product's design embodies 'excessive preventable danger,' or, in other words,

if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits

of such design." *Barker*, 573 P.2d at 454; *see also Rivera Santana*, 132 D.P.R. at 129. Given the lack of

expert evidence that would allow the jury to undertake such analysis and/or identify the supposed

defect in this case, the Court finds that Plaintiffs have failed to satisfy their burden of proof. Quite

the opposite, they simply presented speculatory evidence that does not adequately controvert

Defendant's expert report, nor establish a genuine issue of material fact and, thus, cannot defeat

summary judgment. *Forestier Fradera*, 440 F.3d at 21.

Accordingly, Plaintiffs' design defect claim is hereby **DISMISSED WITH PREJUDICE.**

## CONCLUSION

For the reasons stated, Plaintiffs' Motion for Summary Judgment is **GRANTED**, and

Plaintiffs' product liability claims are hereby **DISMISSED WITH PREJUDICE.** Judgment shall

be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Wednesday, March 31, 2021.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
SENIOR U.S. DISTRICT JUDGE
